UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COREY FORD,

                        Plaintiff,

                                         9:11-CV-212
v.                                      (GTS/RFT)

JOSEPH T. SMITH, Superintendent, Shawangunk
Corr. Facility; C.O. PALMER, Corr. Officer,
Shawangunk Corr. Facility; LAW, Corr.
Officer/Sec. Staff Employee, Shawangunk Corr.
Facility; DeGEORGIO, Corr. Officer, Shawangunk
Corr. Facility; and S. LACIKA, JR., Corr. Officer,
Shawangunk Corr. Facility,

                        Defendants.
_____

APPEARANCES:                              OF COUNSEL:

COREY FORD, 95-A-8605
  Plaintiff, *Pro Se*
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12584

HON. ERIC T. SCHNEIDERMAN           ROBERT W. KINSEY, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendant
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

## **MEMORANDUM-DECISION and ORDER**

Currently before the Court, in this *pro se* prisoner civil rights action by Corey Ford

("Plaintiff") against the five above-captioned Shawangunk Correctional Facility employees

("Defendants"), are (1) Defendants' motion for summary judgment (Dkt. No. 40), (2) United

States Magistrate Judge Randolph F. Treece's Report-Recommendation (Dkt. No. 49), and (3)

Plaintiff's objection to the Report-Recommendation (Dkt. No. 51). For the reasons set forth below, the Report-Recommendation is accepted; Defendants' motion is granted; and all of Plaintiff's claims are dismissed.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Plaintiff filed his initial Complaint on February 24, 2011. (Dkt. No. 1.) Plaintiff filed an Amended Complaint on April 27, 2011. (Dkt. No. 9.) Generally, and liberally construed, Plaintiff's Amended Complaint alleges as follows. He has been a practicing Muslim of the Nation of Islam for the past nine years. (*Id.* at ¶ 10.) During Ramadan in 2009, and 2010, while Plaintiff was incarcerated at Shawangunk Correctional Facility ("Shawangunk C.F."), Defendants failed to provide him with hot water for his pre-dawn meal, which precluded him from exercising one of the five pillars of his faith (i.e., fasting). (*Id.* at ¶¶ 13, 14, 15.)

More specifically, on August 22, 2009, Defendant Palmer refused to provide Plaintiff with hot water despite Plaintiff's request. (*Id.* at ¶ 17.) Similarly, on September 1, 2009, Defendant Law also refused to provide Plaintiff with hot water. (*Id.* at ¶ 18.) On or about September 7, 2009, Plaintiff wrote Defendant Smith to complain about being refused hot water for his pre-dawn meal during Ramadan. (*Id.* at ¶ 19.) Defendant Smith responded by informing Plaintiff that there is no method for providing Plaintiff with hot water, and otherwise did nothing to cure Plaintiff's complaint. (*Id.* at ¶ 20.) Also on or about September 7, 2009, Defendant Law threatened to "put some kind of substance in plaintiff's hot water" in retaliation for writing a complaint to Defendant Smith. (*Id.* at ¶ 21.)

On or about August 14, 2010, Defendant Lacika refused to provide Plaintiff with hot water for his pre-dawn meal during Ramadan. (*Id.* at ¶ 22.) On or about August 28, 2010,

Defendant Doe[1] refused to provide Plaintiff with hot water for his pre-dawn meal during Ramadan. (*Id.* at ¶ 23.) On or about August 30, 2010, Defendant DeGeorgio refused Plaintiff the opportunity to prepare his pre-dawn meal during Ramadan. (*Id.* at ¶ 24.)

Despite his awareness of Plaintiff's denial of hot water during Ramadan for his pre-dawn meal, Defendant Smith did nothing to stop it. As a result, Defendant Smith has allowed and participated in a "blanket policy of depriving plaintiff of his constitutional . . . rights in violation of [Plaintiff's] first and fourteenth amendment rights . . . ." (*Id.* at ¶ 26.) In contrast, Jewish prisoners at Shawangunk C.F. are provided up to four cups of water every day to fulfill their religious dietary requirements. (*Id.* at ¶ 14.) Plaintiff has grieved his complaints through the Inmate Grievance Resolution Committee at Shawangunk C.F. (*Id.* at ¶ 27.)

Based on these factual allegations, Plaintiff asserts claims arising under the First, Fourteenth, and Eighth Amendments, and the Religious Land Use and Institutionalized Person Act ("RLUIPA"). (*See generally* Dkt. No. 9.) As relief, Plaintiff requests damages in the amount of five hundred thousand dollars ($500,000.00), consisting of two hundred and fifty thousand dollars ($250,000.00) in compensatory damages and two hundred and fifty thousand dollars ($250,000.00) in punitive damages, plus costs. (*Id.* at ¶¶ 31-33.) For a more detailed recitation of Plaintiff's factual allegations, the Court refers the reader to the Amended Complaint in its entirety. (Dkt. No. 9.)

---

[1]    Despite Plaintiff's specific allegation against him, Defendant "John Doe" is not listed in the caption of this action. (*See generally* Docket Sheet.) For this reason, the Clerk of the Court is Ordered to add "John Doe" to the caption of this action.

**B.     The Parties' Briefings on Defendants' Motion for Summary Judgment**

On January 23, 2012, Defendants submitted their motion for summary judgment.[2] (Dkt. No. 40.) In their motion, Defendants make the following six arguments: (1) based on the four corners of Plaintiff's Amended Complaint, Plaintiff has failed to state claims under the First and Eighth Amendments (Dkt. No. 40, Attach. 6 at 5-6, 7-8); (2) based on the record evidence, there is no genuine dispute of material fact as to whether Defendants violated Plaintiff's rights under RLUIPA and the Fourteenth Amendments (*id.* at 6-7, 9); (3) any portion of the Amended complaint that seeks compensatory damages for mental and emotional injuries should be dismissed because, based on the four corners of Plaintiff's Amended Complaint, Plaintiff has failed to allege facts plausibly suggesting that he suffered any physical injury (*id.* at 11); (4) to the extent that Plaintiff's Amended Complaint attempts to assert a claim for verbal abuse, that claim should be dismissed because it is not cognizable under 42 U.S.C. § 1983 ("Section 1983") (*id.* at 12); (5) Plaintiff's claims against Defendant Smith should be dismissed because, based on the four corners of Plaintiff's Amended Complaint, Plaintiff has failed to allege facts plausibly suggesting that Defendant Smith was personally involved any of the alleged constitutional violations; (*id.* at 12-13); and (6) Defendants are entitled to qualified immunity and sovereign immunity under the Eleventh Amendment (*id.* at 14-16). For a more detailed recitation of Defendant's arguments, the Court refers the reader to their memorandum of law in support of their motion for summary judgment. (*See generally id.*)

---

[2]     Although Defendants have identified their motion as one for summary judgment, some of Defendants' arguments in their supporting memorandum of law more closely relate to a motion to dismiss for failure to state a claim. (*See generally* Dkt. No. 40, Attach. 6.) For this reason, in this Decision and Order, the Court particularly identifies each of Defendants' arguments as one for summary judgment based on the record evidence, or for dismissal based on the four corners of Plaintiff's Amended Complaint.

Liberally construed, Plaintiff's response makes the following seven arguments: (1) by refusing to provide Plaintiff with hot water for his pre-dawn meal during Ramadan, Defendants precluded him from being able to exercise his Muslim faith in violation of the First Amendment because, without the hot water, he was precluded from fasting as required by his faith (Dkt. No. 44, Attach. 1 at 8); (2) Defendants' refusal to provide Plaintiff with hot water for his pre-dawn meal during Ramadan amounted to a substantial burden under RLUIPA (*id.* at 9-10); (3) the allegations in Plaintiff's Amended Complaint (i.e., Jewish prisoners are supplied with hot water for their religious dietary needs every day) are sufficient to state a claim for an equal protection violation (*id.* at 11-13); (4) the Prison Litigation Reform Act ("PLRA") does not preclude Plaintiff from recovering compensatory damages for constitutional violations arising under the First Amendment (*id.* at 13-16); (5) Plaintiff has adequately alleged the personal involvement of Defendant Smith, because Plaintiff's Amended Complaint alleges that Defendant Smith denied Plaintiff's grievances (*id.* at 17); (6) Eleventh Amendment immunity does not apply in this case because Plaintiff is suing Defendants in their individual capacities (*id.* at 18); and (7) it is not appropriate to grant qualified immunity on a motion for summary judgment (*id.* at 19).

Defendants did not file a reply. (Dkt. No. 45.)

### C.    Magistrate Judge Treece's Report-Recommendation

On August 17, 2012, Magistrate Judge Treece issued a Report-Recommendation recommending that Defendants' motion be granted and that Plaintiff's Amended Complaint be dismissed in its entirety. (Dkt. No. 49.) In particular, Magistrate Judge Treece's recommendation was based on his following four findings: (1) Plaintiff's First Amendment and RLUIPA claims should be dismissed because, even assuming the allegations in Plaintiff's Amended Complaint are true, those allegations give rise to nothing more than a de minimus

violation under RLUIPA and the First Amendment (Dkt. No. 49 at 7-8); (2) because Plaintiff's

allegations giving rise to his equal protection claim under the Fourteenth Amendment is no more

than conclusory, that claim should be dismissed (*id.* at 8); (3) because none of Plaintiff's

constitutional claims survive Defendants' motion, whether Defendants are entitled to qualified

immunity is moot (*id.* at 8-9); and (4) because Defendants Palmer and Doe were never served in

this action, they both should be dismissed from the action pursuant to Fed. R. Civ. P. 4(m) (*id.* at

9).[3] Familiarity with the grounds of Magistrate Judge Treece's Report-Recommendation is

assumed in this Decision and Order, which is intended primarily for review by the parties.

### D.     Plaintiff's Objection

On August 29, 2012, Plaintiff filed his objection to the Report-Recommendation. (Dkt.

No. 51.) Generally, in his objection, Plaintiff asserts the following three arguments: (1) Plaintiff

has set forth a genuine dispute of material fact as to whether hot water is a part of his religious

belief (*id*. at ¶ 7); (2) Plaintiff has set forth a genuine dispute of material fact as to whether the

four incidents that occurred over a period of a year, when Defendants allegedly deprived

Plaintiff hot water for his pre-dawn meal during Ramadan, constitute a de minimis violation of

his rights under the First Amendment and/or RLIUPA (*id.* at ¶ 9); and (3) the fact that Defendant

Smith admits that Jewish prisoners receive up to five cups of water per day for their dietary

restrictions demonstrates the existence of a genuine issue of material fact as to whether

Defendants violated Plaintiff's right to equal protection (*id.* at ¶ 18).

---

[3]      As part of the Report-Recommendation, Magistrate Judge Treece issued an Order
denying Plaintiff's motion for leave to file a Second Amended Complaint (submitted two days
after Defendants filed their motion for summary judgment) and Plaintiff's motion for sanctions
(submitted four days before Defendants filed their motion for summary judgment). (Dkt. No. 49
at 9-11.)

## III.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review Governing a Report-Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[4] When performing such a *de novo* review, "[t]he judge may . . . receive further evidence. . . ." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[5]

---

[4]    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[5]    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.[6] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[7] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[8]

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

---

[6] *See also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).

[7] *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[8] *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

**B.     Legal Standard Governing Motions for Summary Judgment**

Because Magistrate Judge Treece correctly recited the legal standard governing a motion for summary judgment, and Plaintiff has not (in his objection) specifically challenged that recitation, that standard is adopted by, and incorporated by reference in, this Decision and Order, which is intended primarily for the review of the parties.  (Dkt. No. 49, at Part III.A.)

**C.     Legal Standard Governing a Motion to Dismiss for Failure to State a Claim**

For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp.2d 174, 181-84 (N.D.N.Y. 2009) (Suddaby, J.), which accurately recites that standard.

**IV.    ANALYSIS**

As indicated above in Part I.D. of this Decision and Order, while Plaintiff's objection specifically challenges Magistrate Judge Treece's recommendations regarding RLUIPA claim, Plaintiff's First Amendment claim, and Fourteenth Amendment claim, that objection does not specifically challenge Magistrate Judge Treece's recommendation regarding Plaintiff's claims against Defendants Palmer and Doe.  *See, supra,* Part I.D. of this Decision and Order.

After carefully reviewing the relevant filings in this action, the Court can find no clear error Magistrate Judge Treece's recommendation regarding Plaintiff's claims against Defendants Palmer and Doe.  In the alternative, even if the Court were to subject that recommendation to a de novo review, the Court would find that recommendation survives such a review.  The Court reaches this conclusion for the reasons stated by Magistrate Judge Treece in his Report-Recommendation.  (Dkt. No. 49, at 9.)

With regard to the remaining portions of the Report-Recommendation, after carefully reviewing the relevant filings in this action, the Court can find no clear whatsoever in those portions Report-Recommendation: Magistrate Judge Treece employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 49.) The Court reaches this conclusion for the reasons stated by Magistrate Judge Treece in his Report-Recommendation, and the reasons offered by Defendants in their memorandum of law. (Dkt. No. 49, at 5-9; Dkt. No. 40, Attach. 6, at 4-16 [attaching pages "2" through "14" of Defs.' Memo. of Law].)

As a result, Magistrate Judge Treece's Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein. (*Id.*) The Court would add only the following four brief points.

First, with regard to Defendants' argument that Plaintiff's Amended Complaint has failed to allege facts plausibly that Defendants violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment (an argument with which the Court agrees), the Court adds the following analysis. "While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement . . . ." *Green v. LaClair*, 07-CV-0351, 2012 WL 1144569, at *13 (N.D.N.Y. 2012) (Peebles, M.J.). To satisfy the pleading requirements for an Eighth Amendment claim, a prisoner-plaintiff must "satisfy both an objective and subjective requirement –the [prison] conditions must be 'sufficiently serious' from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with 'deliberate indifference.'" *Green*, 2012 WL 1144569, at *13. "Deliberate indifference exists if an official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting

*Farmer v. Brennan*, 511 U.S. 825, 832 [1994]).  Here, Plaintiff's Amended Complaint, even

construed with the utmost liberality, does not allege facts that plausibly suggest that Defendants'

alleged refusal to provide Plaintiff with hot water for his pre-dawn meal during Ramadan

disregarded a risk to Plaintiff's health or safety, or that such refusal by Defendants was

undertaken with the requisite deliberate indifference.  (*See generally* Dkt. No. 9.)

Second, even if the Court (out of an abundance of caution) were to analyze Plaintiff's

Eighth Amendment claim under a summary judgment standard, the Court would conclude that

Plaintiff failed to adduce admissible record evidence from which a rational fact-finder could

conclude that such an Eighth Amendment violation occurred.  (*See generally* Dkt. No. 44.)

Third, in addition to being dismissed for the reasons cited by Magistrate Judge Treece in

his Report-Recommendation (Dkt. No. 49 at 5-8), Plaintiff's free-exercise claim under the First

Amendment is dismissed because Plaintiff's Amended Complaint fails to allege facts plausibly

suggesting that his religious dietary requirements during Ramadan demanded that he eat a meal

prepared with hot water under the circumstances.  (*See generally* Dkt. No. 9.)  Rather, in

contrast, Plaintiff's Amended Complaint alleges that he was provided additional food in his

breakfast bag during Ramadan, without alleging that this additional food violated any of his

religious dietary restrictions.  (*Id.* at ¶ 16.)  Because Plaintiff's Amended Complaint alleges that

Plaintiff was given food for his pre-dawn meal during Ramadan that did not require hot water,

the Court finds that Plaintiff's Amended Complaint fails to allege facts plausibly suggesting that

Defendants deprived Plaintiff of his opportunity to eat a pre-dawn meal during Ramadan.

Fourth, although the Court agrees with Defendants' analysis as to whether a claim for

"verbal abuse" is cognizable under Section 1983 (Dkt. No. 40, Attach. 6 at 12), the Court

construes the allegations against Defendant Law in Plaintiff's Amended Complaint as asserting a claim for retaliation under the First Amendment (Dkt. No. 9 at ¶ 21). Specifically, Plaintiff's Amended Complaint alleges that "on or about 8/7/2009 plaintiff was threatened[ed] by C.O. Law defendant to put some kind of substance in plaintiff's hot water for writing complain[ts] and grievances to defendant smith for being denied his right to practice his religion . . . . [P]laintiff was feared [sic] of being poisoned by defendant Law." (Dkt. No. 9 at ¶ 21.) Because Defendants do not move for the dismissal of this specific claim, the Court is left to analyze that claim in light of (1) its authority to *sua sponte* review the pleading sufficiency of claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), and (2) in the alternative, Defendants' defense of qualified immunity (*see* Dkt. No. 40, Attach. 6 at 13).

With regard to the Court's *sua sponte* review the pleading sufficiency of Plaintiff's retaliation claim, the Court begins by noting that, to state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that (1) the speech or conduct at issue was "protected," (2) the defendants took "adverse action" against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action.[9]

Here, while the Court can find no issue with regard to either the first element or the third element of the above-described test, the Court does find an issue with regard to the second element. Generally, "prison officials' conduct constitutes an 'adverse action' when it 'would

---

[9]    *See Gantt v. Lape*, 10-CV-0083, 2012 WL 4033729, at *8 (N.D.N.Y. July 31, 2012) (Dancks, M.J.) ("To state a retaliation claim under [Section] 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was 'protected'; (2) the defendants took 'adverse action' against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his . . . constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a 'substantial motivating factor' in the defendants' decision to take action against the plaintiff.") (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]).

deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Alicea v. Howell*, 387 F. Supp.2d 227, 237 (W.D.N.Y. 2005) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 [2d Cir. 2001]).  This adverse action inquiry is a contextual one. *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003).  The contextual nature of this inquire permits, and indeed requires, courts to consider a variety of factors in determining whether conduct constitutes sufficiently adverse action for purposes of the First Amendment.

For example, in the case of oral threats, generally, "[t]he less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights."  *Mateo v. Fischer*, 682 F. Supp.2d 423, 434 (S.D.N.Y. 2010).  "In addition, the fact that a threat was never carried out, while not necessarily dispositive, is a factor weighing against a finding of adverse action."  *Alicea*, 387 F. Supp.2d at 237.  Moreover, when a plaintiff appears to be an individual of ordinary firmness, whether or not his speech was actually chilled–while certainly not dispositive of the adverse-action inquiry–appears at least to be a factor in determining whether the speech of a similarly situated inmate (also of ordinary firmness) would be deterred.[10]

When considering the relevant factors, courts should bear in mind that "[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." *Davis*, 320 F.3d at 353.  "The alleged retaliation must be more than

---

[10]     *See Hofelich v. Ercole*, 06-CV-13697, 2010 WL 1459740, at *3 (S.D.N.Y. Apr. 8, 2010) ("Because the 'ordinary firmness' standard is an objective test, the fact that plaintiff was not deterred from exercising his constitutional rights is not dispositive. . . .  However, the fact that plaintiff was not deterred from filing grievances is some evidence that a similarly situated prisoner of ordinary firmness would not have been deterred. . .  In response to the defendants' motion, plaintiff has not come forward with any evidence that he is a person of unusual firmness."); *accord, Starr v. Moore*, 849 F. Supp.2d 205, 209 (D.N.H. 2012) (citing cases from the Courts of Appeals for the Fourth, Eighth, and Eleventh Circuits); *Houseknecht v. Doe*, 653 F. Supp.2d 547, 561 (E.D. Pa.2009) (citing cases from the Courts of Appeals for the Fourth, Tenth and Eleventh Circuits); *cf.* Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence . . . .").

de minimis for it to be actionable." *Alicea*, 387 F. Supp.2d at 237 (citing *Davis*, 320 F.3d at

353). Finally, because of "the ease with which claims of retaliation may be fabricated," courts

should "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v.

Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Based on the contextual nature of the adverse-action inquiry, it is not surprising that

courts within the Second Circuit appear to have reached different results when examining

analogous fact patters. For example, some courts have found that, where the threat has neither

been preceded by nor followed by the threatened conduct actually occurring, a general threat

does not constitute sufficient adverse action.[11] Similar such courts have reached the same

conclusion even where the threat is specific.[12]

---

[11]      *See Mateo v. Fischer*, 682 F. Supp.2d 423, 434 (S.D.N.Y. 2010) (finding that threats "wait till [I] put [my] hands on [you]" and "one day [you] and I will party" for filing grievances were not sufficient adverse action); *Kemp v. LeClaire*, 03-CV-0844, 2007 WL 776416, at \*15 (W.D.N.Y. Mar. 12, 2007) (finding that threats "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" for filing grievances were not sufficient adverse action).

[12]      *See Johnson v. Brown*, 09-CV-0002, 2011 WL 1097864, at \*6 (N.D.N.Y. Mar. 22, 2011) (Suddaby, J.) (finding that threatening to "set up with weapons and/or drugs [being planted] in [the inmate's] cell area, which would result in a new criminal charged being lodged against [him]," for filing grievances was not sufficient adverse action) [quoting allegation in plaintiff's complaint]; *Rosales v. Kikendall*, 677 F. Supp.2d 643, 648 (W.D.N.Y. 2010) (finding that threat that staff would "get [him]," "set[] him up" by planting illegal contraband in his cell, and "remove him from the IGRC office at any cost," for inmate's activities in his role as inmate grievance representative was not sufficient adverse action) [quoting statements from plaintiff's complaint; emphasis in original]; *Garcia v. Watts*, 08-CV-7778, 2009 WL 2777085, at \*11 (S.D.N.Y. Sept. 1, 2009) (finding that threatening to file incident reports against inmate and place him in SHU for filing grievances was not sufficient adverse action); *Cabassa v. Smith*, 08-CV-0480, 2009 WL 1212495, at \*7 (N.D.N.Y. Apr. 30, 2009) (Report-Recommendation of Peebles, M.J., adopted by Kahn, J.) (finding that making the following threats to inmate for filing grievances was not sufficient adverse action: telling inmate in a "pissed off" tone of voice to "back off" or be "subjected to reprisals"; telling inmate that "you're going to regret ever filing that particular [grievance] because I'm going to . . . make you look like you snitched [another inmate] out . . . . Brace yourself because I'm going to get you"; telling inmate that "I can write whatever I want and say that is what you told me"; telling inmate to "back the fuck off . . . or else . . . wind up on the hospital"; and telling inmate his beating is going to be "sanction[ed] then

Meanwhile, other courts have found sufficient adverse action in the case of specific

threats.[13]  Similarly, at least one court has found sufficient adverse action in the case of even a

---

cover[ed] up") [quoting statements from plaintiff's complaint]; *Islam v. Goord*, 05-CV-7502,
2006 WL 2819651, at *1, 5 (S.D.N.Y. Sept. 29, 2006) (finding that threatening to put inmate in
involuntary protective custody for filing an employee misconduct report against corrections
officer was not sufficient adverse action); *Bartley v. Collins*, 95-CV-10161, 2006 WL 1289256,
at *2, 6 (S.D.N.Y. May 10, 2006) (finding that threat "we [are] going to get you" for filing
lawsuit was not sufficient adverse action); *Alicea*, 387 F. Supp.2d at 237 (finding that threat that
inmate would "have to pay the consequences" for filing a grievance was not sufficient adverse
action);  *Pledger v. Hudson*, 99-CV-2167, 2005 WL 736228, at *1, 2, 4, 5 (S.D.N.Y. Mar. 31,
2005) (finding that threatening to filing misbehavior reports against an inmate, remove him from
a prison program, and confine him in SHU, for filing a grievance was not sufficient adverse
action); *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y.1995) (finding that threatening inmate
with disciplinary action, physical violence, an extension of his time in keeplock confinement,
and possible segregation in SHU for lodging complaints was not sufficient adverse action).

[13]        *See Gill v. Tuttle*, 93 F. App'x 301, 303-04 (2d Cir.2004) (finding that threat to
"keep filing misbehavior reports" against inmate for filing could constitute adverse action, *where
the threat was preceded by both the filing of such a misbehavior report and the placement of the
inmate in disciplinary confinement*) [emphasis added]; *Pierce v. Monell*, 06-CV-1290, 2007 WL
2847317, at *8 (N.D.N.Y. Sept. 26, 2007) (Report-Recommendation of Lowe, M.J., adopted by
Kahn, J.) (finding that threatening to file criminal charges against inmate, and kill him, for filing
a grievance was sufficient adverse action, *where the threat was immediately preceded by the
filing of criminal charges*) [emphasis added]; *Lunney v. Brureton*, 04-CV-2438, 2007 WL
1544629, at *3, 18-19, 23 (S.D.N.Y. May 29, 2007) (finding that threats that, "[i]f I ever hear
about you complaining about another officer you'll be sorry.  You won't be so lucky next time,"
and, "if you don't stop writing grievances I'm going to break your fuckin' neck," were sufficient
adverse action, *where they were preceded by a physical assault by prison guards*) [emphasis
added]; *Hepworth v. Suffolk Cnty.*, 02-CV-6473, 2006 WL 2844408, at *2-3, 8-9 (E.D.N.Y. Sept.
26, 2006) (finding that threats that inmate "get another beating" and be killed for filing grievance
was sufficient adverse action, *where the threat was preceded by a beating*) [emphasis added];
*Brown v. Coughlin*, 965 F. Supp. 401, 403-04, 405 (W.D.N.Y.1997) (finding that threat to
inmate that, "We got you on a real bad ticket," and that when officers were "done with him" he
would not want to "file any more complaints," was sufficient adverse action, *where threat to
prosecute him for a disciplinary ticket was immediately preceded by the filing of that ticket*,
expressly noting that "Knapp filed a misbehavior report about Brown on July 18, 1993, the same
day that he and Curren allegedly threatened Brown") [emphasis added]; *Hofelich*, 2010 WL
184453, at *1-4, 9-10 (finding that threats to inmate that he would receive "a new [disciplinary]
sentence on a set-up" and that he would "receive trauma that is irreversible," for filing
grievances, were sufficient adverse action, *where threats were preceded by a disciplinary
sentence on an alleged set-up and the infliction of physical trauma*), *reconsidered on different
grounds*, 2010 WL 1259740 (S.D.N.Y. Apr. 8, 2010).

general threat.[14]

However, the apparent difference in these results may be somewhat illusory, given that in each of the cases cited in notes 13 and 14 the threatened conduct was either preceded by or followed by the threatened conduct (or conduct similar to the threatened conduct) actually occurring, giving the inmate *reason* to lend credence to the threat. *See, supra,* notes 13 and 14 of this Decision and Order. Here, because the threatened conduct was vague as to both the type of "substance" that would be put in Plaintiff's hot water and when (if ever) that might happen, and because the tampering never allegedly happened before the threat was made and did not allegedly happen after the threat was made, the Court finds this case to be more analogous to those cited in notes 11 and 12 of this Decision and Order than to those cited in notes 11 and 12 of this Decision and Order.

In any event, even if the Court needed an additional ground on which to base a determination that a similarly situated inmate of ordinary firmness would not have been deterred by the alleged threat, the Court would have such an additional ground. Specifically, based on the factual allegations of his Amended Complaint, (1) Plaintiff appears to be an individual of ordinary firmness, and (2) he in fact continued to file grievances after the alleged threat. (*See, e.g.,* Dkt. No. 9 at ¶¶ 10-14, 19, 21, 25, 27, 28.) Again, while this factor is fact is certainly it not dispositive of the adverse-action inquiry, the Court finds that it is at least relevant to that inquiry. *See, supra,* note 10 of this Decision and Order.

---

[14]     *See Kerman v. City of New York*, 261 F.3d 229, 232, 242 (2d Cir. 2001) (finding that, after plaintiff had stated that he was going to sue police, an officer's threat that "I'm going to teach you a lesson . . . I'll give you something to sue for," was sufficient adverse action, *where the threat was followed by a handcuffing of plaintiff on the ground face up with his hands behind his back, the refusal to cover his face from his neighbors, and his transportation to a mental hospital*) [emphasis added].

For all of these reasons, the Court finds that, based on the factual allegations of Plaintiff's

Amended Complaint, a similarly situated inmate of ordinary firmness would not have been

deterred by the alleged threat. As a result, the Court finds that Plaintiff's retaliation claim

against Defendant Law must be, and is, dismissed. Because Plaintiff has already been afforded

the opportunity to amend this claim, he need not be, and is not, afforded another such

opportunity prior to dismissal. *Abascal v. Hilton*, 04-CV-1401, 2008 WL 268366, at *8

(N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on *de novo* review, Report-Recommendation by

Lowe, M.J.) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required

where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 F. App'x

388 (2d Cir. 2009); *accord*, *Shuler v. Brown*, 07-CV-0937, 2009 WL 790973, at *5 & n.25

(N.D.N.Y. March 23, 2009) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.),

*Smith v. Fischer*, 07-CV-1264, 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009) (Hurd,

J., adopting Report-Recommendation by Lowe, M.J.).[15]

---

[15]     *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that denial of
leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in
pleading); *Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) ("Nor can we
conclude that the district court abused its discretion in denying Coleman leave to amend. The
district court afforded Coleman one opportunity to amend the complaint, and Coleman made no
specific showing as to how he would cure the defects that persisted if given a second opportunity
to amend."); *Dyson v. N.Y. Health Care, Inc .,* 353 F. App'x 502, 503-03 (2d Cir. 2009) ("[T]he
district court did not abuse its discretion by dismissing Dyson's third amended complaint with
prejudice. . . . [T]he district court afforded Dyson three opportunities to file an amended
complaint so as to comply with Rule 8(a)(2), and, despite these, she did not plead any facts
sufficient to show that she was plausibly entitled to any relief."); *Salahuddin v. Cuomo*, 861 F.2d
40, 42 (2d Cir. 1988) ("We do not mean to imply that the court has no power to dismiss a prolix
complaint without leave to amend in extraordinary circumstances, such as where leave to amend
has previously been given and the successive pleadings remain prolix and unintelligible.");
*Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal of *pro se* plaintiff's
amended complaint without leave to amend, for failure to state a claim upon which relief can be
granted, without engaging in analysis of whether second amended complaint would be futile);
*Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24,
2002) ("Yang's amended complaint fails to remedy this defect in his pleadings. . . . His equal
protection claim is dismissed."), *aff'd*, 71 F. App'x 90 (2d Cir. 2003); *Payne v. Malemathew,* 09-

Finally, because the Court has found adequate reason upon which to base the dismissal of Plaintiff's retaliation claim against Defendant Law, the Court need not, and does not, address Defendants qualified immunity argument with regard to that claim.  Similarly, because none of Plaintiff's other claims survive Defendants' motion, the Court  need not, and does not, address Defendants qualified immunity argument with regard to those claims.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court shall  add "John Doe" as a Defendant in the caption of this action on the docket sheet; and it is further

**ORDERED** that Magistrate Judge Treece's Report-Recommendation (Dkt. No. 49) is **ACCEPTED** and **ADOPTED**; and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No.40) is **GRANTED**; and it is further

**ORDERED** that Defendants Palmer and Doe are **DISMISSED** from this action pursuant to Fed. R. Civ. P. 4(m); and it is further

**ORDERED** that Plaintiff's retaliation claim against Defendant Law is *sua sponte* dismissed for failure to state a claim upon which relief can be granted, pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

---

CV-1634, 2011 WL 3043920, at *6 (S.D.N.Y. July 22, 2011) ("Plaintiff has repeatedly failed to cure the defects in his claims despite having received detailed instructions and despite the bases of the dismissals having been specified in advance, and he has not identified any additional facts he could advance now that would address these defects. Accordingly, nothwithstanding Plaintiff's pro se status, leave to amend yet again is denied."); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) ("While that failure to plead special damages with respect to the other alleged representations in theory might be cured by amendment, plaintiff already has amended once and has not sought leave to amend again. Accordingly, the fraud claims will be dismissed except to the limited extend indicated.").

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 9) is **<u>DISMISSED</u> in its entirety**.

The clerk is directed to enter judgment in favor of the defendants and close this case.

Dated:  September 28, 2012
     Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge